Brinkerhorr, J.
The defendant in error brought suit in the Superior Court of Cincinnati against the plaintiffs in error, and, on the 14th of May, 1855, filed therein the following petition, to wit:
“ The plaintiff, a citizen of the State of Ohio, and a resident of the county of Hamilton, says, that the defendants, the board of county commissioners of the county of Hamilton, in the State of Ohio, being authorized by law, in the exercise of their discretion, to erect a good and convenient court-house, upon such plan as they might project, in the city of Cincinnati, the seat of justice of such county, were on the 11th and 12th days of December, 1854, engaged *101 dn the erection of such court-house, in the city of Cincinnati, which building was designed and then used for the holding of the courts of the county of Hamilton, and for the offices of thé sheriff, clerk of the courts, and certain other county officers, under the direction and sanction of the defendants. On the 11th and 12th days of December, 1854, the rooms on the northwest corner of said building, on the first *floor, were used, under the direction of the defendants, for the holding of the criminal court of Hamilton county; and a certain trial was then and there had, at which the plaintiff was required by a writ of subpena, to appear and testify, and was detained under the order of the court, as such witness, till night. In the erection of sgch court-house, upon the plan projected by the defendants, there was a certain stairway from the first to the second floor, opposite to the main entrance into the building, which persons in their egress from the said court-room, by the usual passages into the street must necessarily pass, and under said stairway was a large opening into the cellar, which the defendants wrongfully and unjustly permitted to remain open, unprotected, and uncovered, and wrongfully and negligently omitted in any manner to guard the same, so as to prevent persons passing along said passage from falling into such opening, and wholly omitted to light the same at night, by reason whereof, and for want of such light and protection over said opening, the plaintiff being such witness required to be in such building, and necessarily detained there in obedience to the order of said criminal court of Hamilton county, till after nightfall on the 12th day of December, .1854, in passing along said passages in his way from the court-room to the street, necessarily and unavoidably slipped and fell into said opening, and thereby the thigh and two ribs of the plaintiff were fractured and broken, and the plaintiff became sick, lame,. and disordered, and so remained for a long space of time, during all which time he suffered great pain, and was prevented from attending to and transacting his necessary and lawful business, and was obliged to expend and did expend a large sum of money in endeavoring to get healed of said wound, sickness, or disorder. The plaintiff therefore demands judgment against the defendants for ten thousand dollars damages.” To this petition the defendants below demurred, on the ground that it did not state facts sufficient to constitute a cause of action. On heai’ing, the demurrer was overruled, and leave was taken to answer. An answer was filed, admitting a part of the material *102 facts alleged in the petition, and denying the remainder. The case was tried by a jury, who found the issues in favor of *the plaintiff below, and assessed his damages at $7,750. After motions for a new trial and in arrest of judgment were made, heard, and overruled, judgment was entered on the verdict. No bill of excep-. tions was taken to any ruling of the court below on the trial.
The case having been reviewed on error by the Superior Court at general term, and the judgment there affirmed, a petition in error is filed here to reverse that judgment of affirmance.
All the errors assigned or assignable on the record, present but the single question which was originally made by the demurrer to the petition, i. e., does the petition state facts sufficient to constitute a cause of action ? If it does, there is no error apparent on this-record ; if it does not, the judgment is erroneous and must be reversed.
It will be noticed that this is an action brought by an individual plaintiff against the commissioners of a county in their official or quasi corporate capacity, to recover damages resulting from the-negligence and misconduct of those officers. No claim is made-against those officers as individuals, but the recovery is sought .against the county; and if this judgment can be maintained, it must in. some way be met and paid by the people of Hamilton county. And thus we are presented with the question: Is a county, or, in: other words, the people of a county, liable in an action sounding in, tort, for the personal misconduct or negligence of the county commissioners while in the performance of their official functions?
If a county be thus liable, that liability must be derived either expressly or by necessary implication from the provisions of some statute, or must rest on the principles -of the common law. W& therefore proceed to inquire:
1. Is such a liability anywhere created by statute?
The only statutory provision to which we have been cited, or of which wo are aware, as having, any bearing on this branch of our inquiries, is the seventh section of the act of March 12,1853, “ establishing boards of county commissioners and prescribing their duties.” Swan’s Eev. Stat. 181. The section is a re-enactment of ;« former statute, and is as follows:
“Seo. 7. That the board of commissioners in the several counties of this state shall be capable of suing and being sued, pleading and being impleaded, in any court of judicature within *103 this state ; and they are hereby authorized and required to ask, demand, and recover, by suit or otherwise, any sum or sums of money or other property due to such county, on account of advances made-by them on any contract with any person or persons, for the erection or repairs of any public buildings or bridges, or any other contract which, by the provisions of this act, they are authorized to-enter into; and in like manner to sue for and recover in m.oney the-value or amount of any labor or article of value, subscribed instead of money, to aid in erecting or repairing public buildings or bridges, where such labor or article of valúe, upon their requisition, shall not have been performed, delivered, or paid for in a reasonable-time; and the money so recovered, in either of the above ckses,. shall be by them paid into the treasury of the county; and they shall take the treasurer’s receipt, and file the same with the auditor of the county.”
This statute does not in terms declare or constitute either the county or the board of county commissioners a body corporate proper; but it clothes the board with one corporate capacity, that of suing and being sued; and this is followed immediately by a specification of the matters in reference to which the board may sue; but the statute is entirely silent as to the matters in reference to which it may be sued. And it is worthy of notice that this statutory enumeration of the matters in respect to which the board of commissioners may sue, is confined to matters of contract. As to all actions or subject-matter of actions sounding in tort, the statute is silent. Now, neither a county nor the board of commissioners of a county is a corporation proper; it is at most but a local organization which, for purposes of civil administration, is invested with a few functions characteristic of a corporate existence. But it is an established rule, that a grant of powers to a corporation proper shall be strictly construed; and it seems to us that this rule is at least equally applicable in any inquiry into the powers and capacities of a quasi corporation, *whose powers and functions are, from their very nature and object, more strictly limited than those of a corporation proper.
While, therefore, it may be granted that inasmuch as the board of county commissioners may sue on all causes of action arising out of the contracts which it is by law authorized to make, it may be fairly and reasonably implied that it may be sued on all causes of action originating in such contracts, we can see no just ground *104 for the further implication from this statute, that the people of the county shall also bo made answerable for the torts committed by the board or its members, while in the discharge of official functions. In the view which, on principle, we take of this statute, we are supported by the case of Commissioners of Gallia County v. Holcomb, 7 Ohio, 232, and by very respectable authority elsewhere. The Board of Chosen Freeholders of Sussex County v. Strader, 3 Harrison (N. J.), 108, is a case strongly analogous in many points to the case at bar, and the bearings of which on other branches of our inquiry will be hereafter noticed. “The board of chosen freeholders” of counties in New Jersey were not only authorized by statute to sue and be sued, but they were expressly created bodies corporate, and were made “ the agents of the counties for executing all the legal purposes, objects, business, and affairs of the counties.” Yet it was there held that the capacity to sue and be sued conferred by statute, must be considered as limited by a reference to the matters and things within the legitimate scope and object of the creation of the corporation, and that the board of freeholders was not liable in an action for negligence, in the performance of a public duty, resulting in a private injury.
The case of Hedges v. The County of Madison, 1 Gilman, 567, was an action against a county in Illinois for negligence in respect to a bridge, which the county was bound to keep In repair, whereby an injury accrued to the plaintiff. The provisions of the statute •of that state bearing on the question are thus stated by Shields, J., delivering the opinion of the court in that case: “ By ‘ an, act to incorporate counties,’ approved January 3, 1827, counties are constituted a body' corporate and politic, with power to make and enter into contracts, and capable of suing *and being sued in relation to such contracts. There is, however, no provision of law giving an action to recover damages in a case like the present.”
From this statement of the provisions of the Illinois statute, it would seem, that though its phraseology is different from that of •our own, its provisions are substantially identical. The Illinois statute expressly declares counties to be bodies corporate, which provision of itself implies the capacity to sue and be sued. The Ohio statute does not declare a county or the board of commissioners to be a body corporate, but imparts in general terms the capacity to sue and be sued. The Illinois statute, in addition to the words of incorporation, expressly gives the power to sue and be *105 sued. “ in relation to contracts.” The Ohio statute enumerates certain causes of action arising out of contracts, in reference to which the board of commissioners may sue, but leaves the capacity to be sued in relation to the same matters to inference and implication. Both are silent as to actions sounding in tort. And in the case named, the Supreme Court of Illinois, in an apparently carefully-considered opinion, unanimously held that no right of action against the county for negligence resulting in individual injury was derivable from the statute.
We conclude, therefore, whether we look solely to the language of our statute, and apply to it those principles of construction which seem to be indicated by the narrow range of the objects and purposes of the county organization, or are governed by the light to be derived from analogous cases elsewhere determined, that if this action can be maintained at all, a foundation for it must be found elsewhere than in the provisions of our statute.
2. Is the action maintainable on the principles of the common law ? In entering on this inquiry, it is but justice to ourselves to .say, that, assisted by the researches of diligent counsel, we have given it an unusual share of labor and attention ; and this not only because of the importance of the question itself, but for the reason that the conclusion to which our minds have been compelled, is in conflict with a case (Commissioners of Brown County v. Butt, 2 Ohio, 348), decided by judges for whose judgment *we entertain that degree of respect which renders even involuntary and irresistible dissent from their conclusions, reluctant and self-distrustful.
For the purpose of maintaining this action, an effort has been made in argument to assimilate counties to natural persons and municipal and other corporations proper. Now it is conceded that that if the negligence and consequent injury to the plaintiff below, had been the act of a natural person in the construction of a private building, to which the plaintiff below had been invited, the party guilty of the negligence would properly be liable in damages. So, also, it now seems to be well settled, that had 'the defendants below been the agents of a municipal or other corporation proper, and had the plaintiff below been injured through like negligence and under like •circumstances, the corporation might be held to answer for the injury. And why? Because where there is a wrong there ought to be a remedy; persons, whether natural or artificial, are bound so *106 to use their own property and conduct their own affairs as not to injure others; and where an act is done to the injury of another by a natural person in the pursuit of his own interests, or, through its agents, by an artificial person, a corporation proper, which is-called into existence, either at the direct solicitation or by the free consent of the persons composing it, for the promotion of their own local and private advantage and convenience, and which can work only through agents, such natural or artificial person is, on every principle of justice and enlightened reason, bound to rectify the consequences of his own misfeasance. And it is freely admitted that if counties are in all material respects like municipal corporations proper, and may be fairly classed with them, then this action ought to be maintained. But how is the fact ? This question is vital, and on its solution the case must depend.
As before remarked, municipal corporations proper are called into-existence, either at the direct solicitation or by the free consent of the people who compose them.
Counties are local subdivisions of a state, created by the sovereign-power of the state, of its own sovereign will, without the particular-solicitation, consent, or concurrent action of the people *who-inhabit them. The former organization is asked for, or at least assented to by the people it embraces ; the latter is superimposed by by a sovereign and paramount authority.
A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to-the policy of the state at large, for purposes of political organization and civil administration, in matters of finance,-of education, of provision for the poor, of military organization, of the means of ¿ravel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy. Ward v. County of Hartford, 12 Conn. 406; Boalt v. Commissioners of Williams Co., 18 Ohio, 16; C., W. & Z. Railroad v. Commissioners of Clinton Co., 1 Ohio St. 89.
The idea that the board of county commissioners is the agent oft the county or of its people, is prominently advanced and pressed on our attention. That board is, in some sort, the agent of the- *107 comity, it is true; inasmuch as it alone is authorized to sue and be sued in respect to contracts growing out of the county organization. There is an administrative necessity that some name should be employed as the representative of the public interests involved' in such suits; and that of the board of county commissioners has, by law, been designated for that purpose; but the name of the-county auditor, or the name of the county itself, had the legislature chosen so to prescribe, would have answered the same purpose-quite as well; and the fact, we' think, has no special weight orsignificanee.
But, it is said, the members of the board of county commissioners are chosen by the electors of the county, and hence the-board is to be regarded as the agents of the county, for whose torts in the performance of official duties the county ought to be responsible. True, the people of the county elect the board of county commissioners; but-they also elect the sheriff and treasurer *of the county. Are the people of the county, therefore, responsible for the malfeasances in office of the sheriff, or for the official defalcations of the county treasurer? This will not be-pretended. And yet, if this case is to rest on the principles governing the relation of principal and agent, wherein is the distinction between the ease at bar and the case supposed? We confess-our inability to discover any such distinction. In the case of municipal corporations proper, the electors are, mediately or immediately, invested with very ample control over their agents, not. only as to what shall be done, but how it shall be done, and by whom it shall be done; they may exact such guarantees as they deem proper for their own indemnity, and may prescribe by-laws-for their government. As between the commissioner and the electors of a county all this is wanting. All his powers and duties are presci’ibed by the supreme legislature; and the electors can exercise no control over him whatsoever, except such as springs from-the bare fact of election; and to this extent they can control a sheriff or treasurer as well as a commissioner.
Chancellor Kent (1 Com. 572, 573) says, that “ a great proportion-of the rules and maxims which constitute the code of the common law, grew into use by the application of the dictates of natural justice and cultivated reason to particular cases;” and that “ the” best evidence” of what that law is, “ is to be found in the decisions- *108 ■of courts of justice, contained in books of reports, and in the treatises and digests of learned men.”
Now, on what principles of “ natural justice,” or of “ cultivated reason,” aside from positive statute, the people of a county should be hold responsible for the personal or official misconduct of a county commissioner, we are wholly unable to perceive.
But how stands the case upon authority, “ by the decisions of courts of justice, and the treatises of learned men?”
The county organization, substantially similar in all its general features and functions, has existed in England from the earliest times, and in all the States of this Union, with perhaps one or two exceptions, more nominal than real, from the period of their ■settlement; yet the researches of diligent counsel, have failed to ^furnish a single case, where an action has been maintained .against a county in a case like the one before us, except that of the Commissioners of Brown County v. Butt, before cited, and which was recognized as authoritative in Richardson v. Spencer, 6 Ohio, 13, but, apparently without any particular examination of the principles on which it was based, or of the authorities bearing <upon them.
It is said that the court below sustained the action in the case before us, on the authority of Commissioners of Brown Co. v. Butt; and we concur with the court below in the opinion, that if that ■case was properly decided, this action must be maintained. We have looked in vain for any substantial distinction between them.
’ In that case, the debtor, having been surrendered by his appear - .ance bail, and committed to the custody of Butt, who was sheriff of Brown county, escaped, by reason of there being no jail in Brown county, and the sheriff not being by law at liberty to imprison the debtor elsewhere than in the jail of the county. The ■creditor having recovered against him, as sheriff, for the escape, But brought his action on the case against the board of commissioners of the county, to recover the damages he had thus sustained by reason of its neglect of duty to provide a jail. The ■court, Burnet, J., dissenting, held the action to be well brought, on the ground that the commissioners were the agents and representatives of the county. In that opinion, for the reasons before indicated, as well as on the authorities about to be noticed, we find ourselves unable to concur. We can not but think that county commissioners are not agents or representatives of the; *109 county in any such sense or manner as to render the people of the county justly answerable for their neglect. The reported opinion of the majority of the court in that case may furnish very abundant reason why the utter neglect of county cornmissioncrs to furnish a jail, and, the sheriff himself being in no fault, a plea of these facts ought to be held a good bar to an action for an escape, and the creditor turned over to an action against the commissioners personally; or, why, if such plea be held bad, the sheriff might maintain his action against the county commissioners in their individual capacity, for the personal injury resulting *to him from their neglect — and as to these alternatives, the question not being directly before us, we express no opinion — but it affords-to our minds no satisfactory reason why the people of the county should be held pecuniarily responsible for the delinquencies of officers over whose acts that people have no supervision or control whatsoever. And the case itself, as before remarked, stands alone. At the time it was made, it was unsupported by any reported case; and, so far as we can ascertain, it remains still unsupported by any case outside of Ohio; while the cases on the other side are uniform, and so numerous as to render a particular notice of all of them too tedious to bo attempted.
The leading case on this subject seems to be that of Russell v. The Men of Devon, 2 Term, 6G7, which was an action on the case against the men dwelling in the county of Devon, to recover satisfaction for an injury done to a wagon of the plaintiff in consequence of a bridge being out of repair, which ought to have been repaired by the county ; to which two of the inhabitants, for themselves and the rest of the men dwelling in that county, appeared and demurred generally. On hearing, the court of king’s bench unanimously sustained the demurrer; and this, apparently, on three grounds: 1. That there was no precedent for such an action; 2. By reason of the inconvenience resulting from the multiplicity of actions for contribution to which a recovery and levying of the judgment upon the inhabitants of the county would give rise; and, 3. That the county of Devon had no fund out of which satisfaction could bo made. And this last reason, it seems to us, applies with great weight to the case in hand. It is true, counties in Ohio have a treasury, and in it various funds. But those funds are all raised for specific purposes ; to those purposes they must be devoted; th© commissioners are authorized to levy no tax, except for such pur *110 poses as are authorized, by statute; and we have no statute authorizing the levy of a tax to satisfy such a judgment as this. And in Boalt v. Commissioners of Williams County, before cited, it was decided that a bill in chancery would not lie against a county to subject equities, and, in the opinion of the court in that case, it is ¡assumed, arguendo, as indisputable, that county bridges, courthouse, ^public offices, jail, or poor-house can not be sold on ■execution at law.
In Riddle v. The Proprietors of the Locks and Canals on Merrimack River, 7 Mass. 169, Parsons, C. J., delivering the opinion of "the court, clearly lays down the principle on which we proceed. He says: “We distinguish between proper aggregate corporations .and the inhabitants of any district who are by statute invested with particular powers without their consent. These are in the books sometimes called quasi corporations. Of this description are counties and hundreds in England; and counties, towns, etc., in this state. Although quasi corporations are liable to information or indictment for a neglect of public duty imposed on them by law, yet it is settled, in the case of Russell et al. v. Inhabitants of the County •of Devon, that no private action can be maintained against them for a breach of their corporate duty unless such action be given by statute. And the sound reason is, that having no corporate fund, and no legal means of obtaining one, each corporator is liable to satisfy any judgment rendered against the corporation. This burden the common law will not impose but in cases where the statute is an authority, to which every man must be considered as assenting. But in regular corporations which have, or are supposed to have, a corporate fund, this reason does not apply.”
The same doctrine is asserted by the same court in Mower v. Inhabitants of Leicester, 9 Mass. 247; and is recognized as settled law by Angell & Ames on Corporations, sec. 630, note. So in South Carolina, 2 Nott & McCord, 537, Young v. Commissioners of the Roads; and White v. City Council, 2 Hill, 571. So in Connecticut, Ward v. The County of Hartford, 12 Conn. 404. The case of the Freeholders of Sussex County v. Strader, 3 Harr. (N. J.) 158, before alluded to, was an action brought by Strader against the county of Sussex, New Jersey, to recover damages for an injury to a team of the plaintiff, on account of a defect in a public bridge which the -chosen freeholders of the county were bound to keep in repair. In that case the court not only sustain the doctrine and distinction *111 laid down in the Men of Devon, and by Chief Justice Parsons, *in 7 Mass., but Chief Justice Hornblower, in delivering his opinion, supposes, and remarks upon almost the very case before us. He says: “ It is the duty, for instance, of the board of freeholders to erect and keep in repair court-houses and jails. A neglect to do so may occasion great inconvenience, perhaps positive loss or •injury to some individual whose business or duty requires his attendance at court. The building, by being old and out of repair, may give way and break a man’s limbs, or occasion him an injury ■in some other way; but no one will pretend that in such a case an action would lie by the person injured against the county.”
The same doctrine was recognized and applied in Illinois, in Hedges v. The County of Madison, 1 Gilman, 567; by the Supreme Court of the United States, in Fowle v. Common Council of Alexandria, 3 Peters, 409; and is also applied and strongly urged and approved by the Supreme Court of New York, in the able opinion of Selden, J., in Morey v. The Town of Newfane, 8 Barb. S. C. 645.
It is undoubtedly competent for the legislature to make the people of a county liable for the official- delinquencies of the county commissioners, and if they think it wise and just, without any power in the people to control the acts of the commissioners or to exact indemnity from them; but this has not yet been done, and we think that such liability can not be derived from the relation ■of the parties, either on the principles or the precedents of the common law.
In conclusion, and at the risk of the penalties of tautology, I repeat, that while, both upon principle and authority, we find ourselves compelled to overrule the case of The Commissioners of Brown County v. Butt, as having been erroneously decided, we do so with extreme reluctance, and with all respect for the judgment and veneration for the memory of the judges who decided it; but, with our convictions, we could not do otherwise, and in overruling it, we are satisfied we are contributing to place the law of Ohio upon a.footing of sound principle, as well as in harmony with that of other states, whose jurisprudence, like our own, rests on the basis of the common law.

Judgment reversed.

*Bar.tley, C. J., and Swan, Bowen, and Scott, JJ., concurren.